UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-2411 |
| | § | |
| CHIOS, INC.; dba ZITI'S ITALIAN | § | |
| RESTAURANT; aka ZITI'S RISTORANTE | § | |
| ITALIANO, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OF**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case proceeded to trial before this Court. Plaintiff Joe Hand Promotions, Inc. and

Defendants 1) Chios, Inc., Individually and d/b/a Ziti's Italian Restaurant a/k/a Ziti's Ristorante

Italiano; 2) John N. Phillipos a/k/a John Phillips, Individually and d/b/a Ziti's Italian Restaurant

a/k/a Ziti's Ristorante Italiano; and 3) Nickolas Phillipos, Individually and d/b/a Ziti's Italian

Restaurant a/k/a Ziti's Ristorante Italiano, (collectively "Defendants") appeared by and through

their counsel of record. After considering the pleadings, the evidence, the arguments and

authorities presented by counsel, the Court makes its findings of fact and conclusions of law as

attached hereto.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 605 and venue

is proper pursuant to 28 U.S.C. § 1391(b).

This Court has jurisdiction over this matter and the parties to this cause.

This cause is brought pursuant to the Communications Act of 1934, as amended, 47

U.S.C. § 605 (the "Communications Act").

Plaintiff is in the business of marketing and licensing commercial exhibitions of closed-circuit pay-per-view events.

Plaintiff possessed the proprietary rights to exhibit and sublicense the right to exhibit the closed-circuit telecast of the November 21, 2009, UFC 106: Ortiz/Griffin II Event, including undercard or preliminary bouts (collectively the "Event") to commercial establishments such as Defendants' Establishment, Ziti's Italian Restaurant a/k/a Ziti's Ristorante Italiano (the "Establishment").

Plaintiff was licensed to exhibit the Event at closed circuit locations, such as theaters, arenas, clubs, lounges, restaurants and other commercial establishments throughout the State of Texas.

In Texas, the Event was legally available to commercial establishments only through an agreement with Plaintiff.

In order to safeguard against the unauthorized interception or receipt of the Event, the interstate satellite transmission of the Event were electronically coded or scrambled and were not available to or intended for the use of the general public. In order to receive the signal and telecast of the Event clearly, decoding or descrambling equipment was necessary.

Authorized commercial establishments which contracted with Plaintiff were required to pay to Plaintiff a sublicense fee to receive the Event. This sublicense fee for the Event was based on the capacity of the establishment.

On the date of the Event, the Establishment was a commercial establishment.

On the date of the Event, Defendants were the owners and/or managers of the Establishment on the date of the Event.

On the date of the Event, Defendants held the mixed beverage liquor license issued by the Texas Alcoholic Beverage Commission for the Establishment at the time of the Event.

The Court infers from Defendants invocation of the Fifth Amendment in their answer, and failure to amend their answer, that any evidence would be unfavorable to Defendants' interests.

On the date of the Event, Defendants had the right and ability to supervise the activities of the Establishment.

The persons at the Establishment serving as bartenders, and/or the manager, acted as agents on Defendants' behalf on the date of the Event.

Defendants had an obvious and direct financial interest in the activities of the Establishment on the date of the Event.

Defendant Chios, Inc.'s, owners benefit financially from the Establishment's activities and profits.

Defendants John N. and Nickolas Phillipos obtained a monetary benefit from the Establishment's profits.

Defendants John N. and Nickolas Phillipos were officers and/or owners of the entity owning the Establishment on the date of the Event.

Defendants John N. and Nickolas Phillipos were managers of the Establishment on the date of the Event.

Defendants John N. and Nickolas Phillipos had a right of control of the Establishment and a pecuniary interest in the Establishment.

Defendants did not (nor did anyone on behalf of Defendants) order the Event for the Establishment.

Defendants did not (nor did anyone else on behalf of Defendants) pay a licensing fee for the Event for the Establishment.

Defendants did not (nor did anyone else on behalf of Defendants) order the Event for the Establishment from any other authorized party with the intention of paying Plaintiff for the telecast of the Event.

Defendants were aware that a licensing fee had to be paid to Plaintiff in order to telecast the Event in the Establishment.

The Event was shown at Defendants' Establishment on multiple televisions.

On November 21, 2009, without authorization, Defendants intercepted and received or assisted in the interception and receipt of the transmission of the Event in the Establishment.

Defendants intercepted the broadcast of the Event at the Establishment.

Defendants showed and broadcasted or assisted in the broadcast of the Event to the patrons of Defendants' Establishment on multiple televisions.

The patrons at Defendants' Establishment purchased meals and/or drinks while viewing the Event.

The showing of the Event at Defendant's Establishment was not authorized by Plaintiff.

The interstate satellite transmission of the Event was electronically coded or scrambled and was not available to or intended for the use of the general public.

Plaintiff did not give or provide Defendants or Defendants' Establishment with any electronic decoding equipment or satellite coordinates necessary to receive the signal for the Event.

The television monitors within the Establishment exist for the viewing pleasure of the Establishment's patrons and the Establishment exhibits television programming that is believed to be of interest to the Establishment's patrons.

Defendants knew that the Establishment was not authorized to broadcast or exhibit the Event.

Defendants knew that the Establishment did not obtain a license to broadcast or exhibit the Event.

Defendants received the transmission of the Event through misappropriation.

The Establishment received the transmission of the Event through misappropriation.

Defendants broadcasted or assisted in the broadcast of the Event to the patrons of Defendants' Establishment.

The Establishment broadcasted or assisted in the broadcast of the Event to the patrons of Defendants' Establishment.

Defendants failed to pay any licensing fees to Plaintiff for such interception and exhibition of the Event.

The Establishment failed to pay any licensing fees to Plaintiff for such interception and exhibition of the Event.

Defendants could not have obtained the transmission of the Event had Defendants not undertaken specific wrongful actions to intercept, receive and/or exhibit the telecast of the Event.

The Establishment could not have obtained the transmission of the Event had the Establishment not undertaken specific wrongful actions to intercept, receive and/or exhibit the telecast of the Event.

Because the Event was broadcast to the patrons of Defendants' Establishment, Defendants' only purpose and intent in exhibiting the Event was to secure a private financial gain and direct commercial purposes by misappropriating Plaintiff's licensed exhibitions and infringing upon Plaintiff's rights while avoiding proper payment to Plaintiff.

On November 21, 2009, in violation of Plaintiff's rights and the Communications Act, Defendants willfully and for purposes of direct or indirect commercial advantage or private financial gain intercepted and/or received the transmission of the Event. Defendants' actions in so doing was a misappropriation and theft of Plaintiff's licensing rights and infringement of Plaintiff's exclusive rights under 47 U.S.C. § 605.

Plaintiff is an aggrieved party under the Communications Act for Defendants' unauthorized telecast of the Event at the Establishment.

Plaintiff elects to receive statutory damages rather than actual damages pursuant to the Communications Act.

The licensing fee for the Establishment for the Event would have been $925.

Plaintiff is entitled to statutory damages and attorney's fees pursuant to 47 U.S.C. § 605 in the following amounts:

1.  That Plaintiff Joe Hand Promotions, Inc. recover statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000.00 and for additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).

2.  The plaintiff recovers attorneys' fees for the prosecution of this case through trial in the amount of $7,500 for prosecution of this case through trial and for the additional sum of $7,500 in the event of an appeal.  These amounts of attorneys' fees are reasonable.

<u>CONCLUSIONS OF LAW</u>

Subject matter jurisdiction is proper in this Court.

Personal jurisdiction over the parties in this case is proper in this Court.

Plaintiff has standing and is entitled to bring this action against Defendants.

Plaintiff is an aggrieved party pursuant to 47 U.S.C. § 605. *See* 47 U.S.C. § 605(d)(6)

("any person with proprietary rights in the intercepted communication…" may bring a private

cause of action against one who acts in violation of Section 605);

When Congress enacted the Communications Act, it was specifically cognizant of the

problems of theft of various wire communications, including closed-circuit programming, such

as the Event. *See* Cable Communications Policy Act of 1984, House Report No. 98-934, 1984

U.S.C.C.A.N. §§ 5-6, 4655, 4720:

> The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry-the theft of cable service. This problem has taken on many forms from the manufacture and sale of equipment intended to permit reception of cable services without paying for it, to apartment building dwellers "tapping" into cable system wire in a building's hallway that issued for providing service to a neighbor's apartment unit, to the sale by building superintendents of cable converters left behind by previous tenants to new tenants. Such practices does not only often permit one to obtain cable service without paying the installation and hookup costs, but also, for instance, involve individuals gaining access to premium movie and sports channels without paying for the receipt of those services. Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving. The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it.

The unauthorized interception and broadcast of either satellite or cable transmissions

violates both 47 U.S.C. § 605.

Defendants' interception, receipt and exhibition of the Event violates 47 U.S.C. §§ 553 and 605.

Sections § 605 of the Communications Act are strict liability statutes.

As a result of Defendants' illegal interception, receipt and exhibition of the Event, Plaintiff is entitled to statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff should be further compensated as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Event and to Defendants' Establishment and its patrons as well as the value of "business investment, business opportunities and goodwill." *See American Television and Communications Corp. v. Floken, Ltd.,* 629 F. Supp. 1462, 1466 (M.D. Fla. 1986); *see also, Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986) ("The unauthorized interception and exhibition of the [plaintiffs'] programs results in more than a loss of fees to the plaintiffs. It also deprives the plaintiffs of the full value of the business investment, costs them business opportunities, and has a negative impact on the plaintiffs' reputation and good will. [Plaintiff] has suffered and continues to suffer the loss of its right to control the reception of its communications.") (citations omitted).

Plaintiff shall be awarded statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $10,000.00 and additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from the defendants jointly and severally.

Defendants' violation of the Communication Acts was willful. As Defendants owned and managed the Establishment, Defendants could not have obtained the transmission of the Event had the Defendants not undertaken specific wrongful acts to intercept and/or receive and broadcast the telecast. *See KingVision Pay-Per-View, Ltd. V. Jasper Grocery,* 152 F.Supp. 2d 438, 442 (S.D.N.Y. 2001) ("Kingvision is entitled to a further enhancement because the violation

was willful and done with the purpose of profiting commercially. *See* 47 U.S.C. § 605(e)(3)(C)(ii). In order to access the telecast, it would have been necessary to use an unauthorized decoder, to illegally divert cable service into the store, or improperly relocate an authorized decoder (in this case, possibly the one belonging to Ms. Scott). In any of these scenarios, the illegality of the action would have been apparent to the perpetrator. And there can be little doubt that the defendants were motivated by profit in showing the fight. While Jasper Grocery apparently did not advertise the event, it clearly used the fight to draw potential customers who would then spend money inside the store.") (internal citation omitted).

In order for an unauthorized commercial establishment to receive a broadcast such as the Event, there must be some wrongful action, such as using an unauthorized decoder, obtaining cable service and illegally altering the cable service to bring the signal of the Event into the establishment or moving an unauthorized decoder from its authorized location to the establishment. *See Memorandum and Order in Garden City Boxing Club, Inc., v. Hernandez,* Civil Action No. H-03-5189 (S.D. Texas, September 15, 2004) (Rainey, J.) ("Moreover, in light of the size of Establishment, the Court finds it highly unlikely that the defendant was unaware that the Ruiz/Jones fight was being exhibited illegally in the Establishment that night"); *Garden City Boxing Club, Inc. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001) ("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that there must have been some knowledge on the part of Defendant that such interception could not be had for free.").

Generally, it is reasonable to increase an actual or statutory damages award by a multiplier to penalize Defendants for willful acts. *See e.g., Cablevision Systems Corp. v. Maxie's*

*North Shore Deli Corp.*, 1991 WL 58350, No. CV 88 2834 (ASC) (E.D.N.Y. 1991) (the court awarded five times the statutory damages for willful violations); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (court awarded four times statutory damages for willful violations); *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) (additional damages of five times actual damages for willful conduct); *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981) (an increase of seven times the actual damages for willful acts); *Time Warner Cable of New York City v. Googies Luncheonelle, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (awarding eight times statutory damages as additional damages against defendant that was multiple offender, as opposed to three to four times for less culpable defendants); *Fallici v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983) (As a willful violator of the Communications Act, Defendant must be held accountable for a substantial amount above the market value of the sublicense fees to broadcast the Event. Otherwise, other commercial establishments "would be encouraged to violate the law knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market.").

Defendants exhibited the Event for their commercial advantage.[5] *See, e.g.*, *KingVision Pay-Per-View, Ltd. v. Hay Caramba Mexican Restaurant*, No. H-02-1311 (S.D. Tex. March 10, 2003) (Hoyt, J.) (*Memorandum and Order*) ("It is the Court's view that the defendant profited even if it did not charge a cover by selling food and beverages to the patrons who expected and did view the broadcast."); *Time Warner Cable of New York City,* 988 F. Supp. at 111 ("[D]efendant's display of the Event most likely led to an increased number of patrons, and thus to an increase in profits from food and beverages.").

Defendants' invocation of the Fifth Amendment in their answer, and their failure to amend the answer, constitutes an admission of Plaintiff's allegations.

Plaintiff is entitled to its reasonable attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amounts of $7,500 for prosecution of this case through trial and for the additional sum of $7,500 in the event of an appeal.   These amounts of attorneys' fees are reasonable.

Any of the foregoing findings of fact which contain conclusions of law shall be deemed to be conclusions of law, and any of the foregoing conclusions of law which contain findings of fact shall be deemed to be findings of fact.

It is so Ordered.

SIGNED at Houston, Texas this 27th day of July, 2012.

_____
Kenneth M. Hoyt
United States District Judge